# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6961 | **DATE** | 2/26/2002 |
| **CASE TITLE** | COMMERCIAL UNION INSURANCE CO. vs. AUTO EUROPE, L.L.C. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted. Commercial Union does not owe a duty to defend or indemnify Auto Europe in the Harte Suit.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | FEB 28 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| LG | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

COMMERCIAL UNION INSURANCE )
COMPANY, )
)
)
Plaintiff, )
)
)  No. 01 C 6961
v. )
)  Judge John W. Darrah
AUTO EUROPE, L.L.C. )
)
Defendant. )

**DOCKETED**
**FEB 2 8 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Commercial Union Insurance Company ("Commercial Union"), filed a declaratory judgment action, seeking a determination of Commercial Union's duty to defend the Defendant, Auto Europe, in the presently pending cause of action *Harter, et al. v. Auto Europe, L.L.C., et al.*, No. 01 L 7549 ("Harter Suit"). Presently before the Court are the parties' motions for summary judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of its claim on which it bears the burden of proof at trial. As such, it must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

Auto Europe is a Delaware Corporation with its principal place of business in Portland,

Maine. It is a wholly-owned subsidiary of Travel Services International ("TSI"), which is a

subsidary of AirTours P.L.C. ("AirTours"). (Def.'s 56.1(a)(3) Statement ¶ 1). AirTours entered

into insurance policies with Commercial Union effective annually from October 1, 1997 through

October 1, 2000. (Id., at ¶ 3). The insurance policies were negotiated in England and delivered by

Commercial Union to AirTour's subsidiaries in Miami, Florida. (Id., at ¶ 8).

The Commercial Union policies provide in the Tours Operator's Proffessional Liability

Coverage ("Tour Operator's Coverage") insuring agreement that Commercial Union will pay those

sums that Auto Europe becomes legally obligated to pay as damages as a result of a "wrongful

act" in the furnishing of "professional services" to which the insurance applies. (Plaint.'s

56.1(a)(3) Statement ¶ 10). The Commercial Union policies contain the following exclusions

applicable to the Tour Operator's Coverage:

> B.     Exclusions
> This insurance does not apply to:
> s.      Fines, Penalties and Punitive Damages
>         Fines, penalties, punitive damages or the return of fees
>         paid by any insured.
> t.      Multiplication of Actual damages
>         That portion of any award or judgment caused by the
>         trebling or multiplication of actual "damages" under federal
>         or state law.
> u.      Personal Profit or Advantage
>         Any "damages" arising out of any actual gain by the
>         insured of any personal profit or advantage to which the
>         insured was not legally entitled.
>                                   ***
> ac.     Dishonest, Fraudulent, Malicious or Criminal Acts
>         "damages" arising out of any "wrongful act" which is:
>         (1) Willfuly dishonest, fraudulent or malicious;
>         (2) In willful violation of any penal or criminal nature or
>         ordinace; and
>         (3) Committed or omitted by or with the knowledge or
>         consent of the insured. (Tour Operator's Coverage).

An organization's "executive officers" are insured with respect to their duties as

exectuive officers, and employees are insured for acts within the scope of their employment under the Tour Operator's Coverage. (Def.'s 56.1(a)(3) Statement ¶ 7). The corporation, itself, is also an insured. (Tour Operator's Coverage C(1)(c).

In June 2001, Bjorn Harter, William Grogan, Daniel Burke, and Edward Sadlowski (collectively "the Harter Plaintiffs"), on behalf of themselves and a national class of plaintiffs, filed the Harter Suit in Illinois state court. (Def.'s 56.1(a)(3) Statement ¶ 11). The second amended complaint of the Harter Suit seeks compensatory and punitive damages from Auto Europe for alleged violations of the Illinois Consumer Fraud Act (ICFA), the Maine Unfair Trade Practices Act (MUTP), and the Racketeering Influenced and Corrupt Organizations Act (RICO). (Id., at ¶ 12).

The Harter Suit alleges that Auto Europe engaged in a "fraudulent and deceptive scheme" by misstating that a foreign "sales tax" or "value added tax" was due on the car rental price when no such tax was actually due, and Auto Europe retained such "tax" as profits. Plaintiffs in the Harter Suit seek to be certified as a nationwide class action. (Harter Suit Second Amended Complaint).

In July 2001, Auto Europe notified Commercial Union of the Harter Suit and requested Commercial Union defend Auto Europe in the lawsuit. (Def.'s 56.1(a)(3) Statement ¶ 15). Commercial Union denied defense and indemnity obligations to Auto Europe based on its conclusion that the lawsuit did not contain allegations that were covered under the insurance policies. (Plaint.'s 56.1(a)(3) Statement ¶ 14).

The parties disagree which law will be applied in the present suit. Auto Europe argues that Maine law applies because Maine has the "most significant contacts" with this action. Commercial Union argues that California law applies.

A federal court sitting in diversity in Illinois applies Illinois choice-of-law provisions. *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1122 (7th Cir. 1998). Under Illinois law, insurance policies are generally governed under the "most significant contacts" test. This test requires an anlaysis of: (1) the location of the subject matter, (2) the place of delivery, (3) the domicile of the insured or the insurer, (4) the place of the last act to give rise to a valid contract, (5) the place of performance or other place bearing a rational relationship to the general contract. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill. 2d 520, 526-27 (1995).

The location of the subject matter is the location of the risk insured by the insurance policies at issue. The location of the insured risk is often viewed as the most important factor. *See Emerson Electric Co. v. AETNA Casualty & Surety Co.*, 319 Ill. App. 218, 232 (2001) (*Emerson*).

Here, the insured risk is Auto Europe's commercial activity, which originates from its principal place of business in Maine. The place of delivery of the insurance policies in the present case was Florida. The domicile of the insured is Maine, and the domicile of the insurer is Massachusetts.

Typically, the last act required to make an insurance policy effective takes place where the policy is delivered and the premiums are paid. *See Emerson*, 319 Ill. App. 3d at 233, citing 4 Appleman in Insurance 2d § 21.6, at 278 (1998). In the instant case, the parties do not indicate from where the premiums were to be paid; however, the policy was delivered in Florida.

A major factor in determining the place of performance of an insurance policy is the place where the claim is to be paid. *See Emerson*, 319 Ill. App. 3d at 233. Here, any payment on the claim would be made to Auto Europe, which is located in Maine.

Based on the above facts, Maine law applies to this action because Maine has the most significant contacts with the insurance policies.

Under Maine law, the determination of whether a duty to defend exists is resolved by comparing the complaint with the terms of the insurance contract. *Elliott v. Hanover Ins. Co.*, 711 A.2d 1310, 1312 (Me. 1998) (*Elliott*). If the allegations in the underlying complaint "are within the risk insured against and there is any potential basis for recovery, the insurer must defend the insured regardless of the actual facts on which the insured's ultimate liability may be based." *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1352 (Me. 1996) (*Gibson*). Any ambiguity in the insurance policy is construed in favor of the insured. *Union Mut. Fire Ins. Co. v. Inhabitants of Topsham*, 441 A.2d 1012, 1015 (Me. 1982). If an insurer has a duty to defend against one count of a comlaint, it has a derivative duty to defend against other counts if such counts are sufficiently related that apportioning defense costs is not practicable. *See Gibson*, 673 A.2d at 1354.

Commercial Union first argues that it does not a have a duty to defend Auto Europe under the "bodily injury", "property damage", "advertising injury", "personal injury", or "personal and advertising injury" provisions of the insurance policies. Auto Europe does not contest this argument. Therefore, Commercial Union does not have a duty to defend under these provisions of the insurance policy.

Commercial Union next argues that coverage is excluded under the "Personal Profit or Advantage" exclusion of the insurance policy. Auto Europe argues that this exclusion does not apply because there are no allegations of "personal profiting" in the Harter complaint. Auto Europe contends this exclusion applies only if a human being or individual, such as a director or officer, receives a profit or advantage because the exclusion states "personal" profit or

advantage. Neither party identifies any other language in the insurance policy to aid in the interpretation of the clause.

The insurance policy contains an exclusion of any damages "arising out of any actual gain by the insured of any personal profit or advantage to which the insured was not legally entitled." One count of the Harter complaint alleges, in pertinent part, that Auto Europe included an "add-on which is not a tax or insurance but is simply an extra profit to the broker, or a disguised increase in the price". The RICO count includes an allegation that Auto Europe, "[a]s a 'person'" received income from its racketeering activity.

Personal profit and advantage exclusions have been applied to natural persons such as directors and officers. *See e.g.*, *Travelers Cas. & Surety Co. v. Castegnaro*, 772 A.2d 456, 459-60 (Pa. 2001); *National Unity Fire Ins. Co. of Pittsburgh, Pa. v. Contiental Illinois Corp.*, 666 F. Supp. 1180, 1199 (N.D. Ill. 1987). The exclusion has also been applied to a corporation. *See Plainview Milk Prod. Coop. v. Westport Ins. Corp.*, 2001 WL 1640101 (D. Minn. Nov. 21, 2001) (*Plainview*).

In *Plainview*, as here, the insured argued that the personal profit and advantage exclsuion did not apply because the underyling complaint did not allege that a natural person, such as a director or officer, received a profit or advantage. *Plainview*, 2001 Wl 1640101 at * 2. The *Plainview* court rejected the argument, finding that the corporation was an insured, and nothing in the insurance policy limited the definition of "insured" to natural persons. *Plainview*, 2001 WL 1640101 at * 3.

The *Plainview's* holding is persuasive and is supported by the common definitions of the terms used within the insurance policy. "Personal" is defined as "[o]f or affecting a person". Black's Law Dictionary 1163 (7th ed. 1999). "Person" is defined as a "human being" or "[a]n

entity (such as a corporation) that is recognized by law as having the rights and duties of a human being." Black's Law Dictionary 1162 (7th ed. 1999); *see also* Principles of Corporate Goverance: Analysis and Recommendations § 1.28 (1992) (defining "person" as "an individual" or "any form of oraganization, including a corporation...."). Furthermore, a reading of the exclusion as a whole indicates that the purpose of the exclusion was to exclude coverage when the insured receive profits to which the insured was not legally entitled. (Emphasis added).

Auto Europe also argues that an adoption of Commercial Union's construction of the exclusion provision would automatically exclude from coverage any conduct that inured to the benefit of the insured. This argument is without merit when the exclusion is considered in its entirety. The exclusion specifically requires that the profit be acquired through means to which the insured was not legally entitled. If the profit was acquired by lawful means by the insured, the insured may be covered by the policy, and the personal profit and advantage exclusion would not apply.

Based on the above, the personal profit and advantage exclusion is applicable to the material allegations of the Harter complaint, and Commercial Union does not owe a duty to defend Auto Europe in the Harter Suit based on this exclusion.

Alternatively, Commercial Union argues that the insurance policies' "Fines, Penalties and Punitive Damages" exclusion applies to the present case. This type of exclusion is sometimes referred to as a "return of fees" exclusion. *See Hofing v. CNA Ins. Co.*, 588 A.2d 864, 869 (N.J. Super. Ct. App. Div. 1991) (*Hofing*). Auto Europe does not dispute that the Harter Plaintiffs' claims for punitive damages are excluded from coverage under this exclusion.

Auto Europe does contest exclusion for the remaining claims, contending that the Harter Plaintiffs seek more than a "return of fees". The Harter complaint states that the plaintiffs seek

7

actual damages and attorneys' fees. The attorneys' fees are related to the request for the award of actual damages and constitute consequential compensatory damages that are within the coverage of the insurance policy. Accordingly, the "return of fees" exclusion does not exclude coverage in the instant case. *See Hofing*, 588 A.2d at 869 (consequential damages do not come within "return of fees" provision).

In light of the above finding that coverage is excluded by the "Personal Profit and Advantage" exclusion, the Court need not address Auto Europe's remaining arguments in support of its motion for summary judgment.

Furthermore, because Commercial Union does not have a duty to defend Auto Europe in the Harter Suit, there is no duty on the part of Commercial Union to indemnify Auto Europe for any liability incurred as a result of the Harter Suit. *See Northern Sec. Ins. Co. v. Dolley*, 669 A.2d 1320, 1322 (Me. 1996); *Northland Ins. Co. v. Coconut Corp.*, 961 F. Supp. 20, 22 (D. Me. 1997); *see also United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992).

For the foregoing reasons, Auto Europe's Motion for Summary Judgment is denied. Commercial Union's Motion for Summary Judgment is granted. Commercial Union does not owe a duty to defend or indemnify Auto Europe in the Harter Suit.

Dated: 2/26/02

JOHN W. DARRAH
United States District Judge

8